LUTHER E. HALL, Judge pro tem.
Mrs. Lydia Pelous brought this suit to recover damages for personal injuries sustained by her as to the result of an inter-sectional collision between an automobile driven by her husband, in which she was a guest passenger, and an automobile owned by Philip F. Jaeger and operated by his handy man, Julius L. Stepter. She joined as defendants, her husband, Sidney Pelous, Philip F. Jaeger, Julius L. Stepter and Audubon Insurance Company, the liability insurer of both the Pelous and the Jaeger automobiles.
Plaintiff’s suit against her husband was dismissed on an exception of no right of cause of action.
After trial on the merits judgment was rendered in favor of plaintiff for $3,900.00 against Julius Stepter and Audubon Insurance Company as the insurer of Sidney Pelous. Plaintiff’s suit as to Philip Jaeger and Audubon Insurance Company as the *250 insurer of the Jaeger vehicle was dismissed. Audubon Insurance Company as insurer of Pelous appealed. Plaintiff answered the appeal and prayed that the damages awarded be increased from $3,900.00 to $10,000.00 and that judgment of the trial court in all other respects be affirmed. This judgment is now final insofar as it held that Julius Stepter was guilty of negligence and that neither Philip Jaeger nor Audubon Insurance Company could be held liable for that negligence.
Two questions are presented by this appeal: (1) whether plaintiff’s husband, Sidney Pelous, was guilty of any negligence which concurred with that of Stepter to produce the accident or which contributed proximately to the accident and, if so, (2) whether the award of damages is either inadequate or excessive.
The record reveals that at dusk on Sunday, November 16, 1958 between 5 :00 and 6:00 P.M. plaintiff was a guest passeng-er in a 1950 Chevrolet automobile being operated by her husband, Sidney Pelous, on Jefferson Highway in an easterly direction toward New Orleans. At about the same time Julius L. Stepter was operating a Ford station wagon owned by Philip F. Jaeger on Causeway Boulevard in a southerly direction toward the Mississippi River. The two cars collided in the intersection of Causeway Boulevard and Jefferson Highway with resultant injuries to the plaintiff.
Jefferson Highway at the scene of the accident consists of three eastbound and three westbound traffic lanes divided by a 24 foot neutral ground. Causeway Boulevard occupies a wide strip of ground running in a northerly direction from the Mississippi River to Lake Pontchatrain, and consists of a middle portion which supports an overpass, and two three-lane ground level roadways, one on each side of the overpass. We are here concerned only with the roadway which parallels the overpass on the western or Baton Rouge side. Traffic thereon flows in a one-way direction south towards the River, and traffic thereon is controlled by a stop sign at its intersection with Jefferson Highway. The Highway and Causeway Boulevard intersect at right angles.
The undisputed testimony is that Sidney Pelous, accompanied by his wife, was driving in the extreme right hand lane of Jefferson Highway as he approached the causeway from the west. He was travel-ling at about 35 miles per hour in an easterly direction towards New Orleans. The station wagon driver by Stepter was travelling south on Causeway Boulevard approaching the intersection from the north. When he reached the intersection he continued on across the west bound roadway of the highway, passed through the neutral ground, and had almost cleared the east bound roadway when the station wagon which he was driving was hit broadside by the Pelous automobile. The point of impact occurred in the extreme right hand or river side lane of the east bound roadway of the highway.
Stepter testified that he came to a stop before entering the intersection and stopped again in the neutral ground to observe traffic approaching from his right; that he observed the Pelous automobile approaching from his right about 150 feet away and thinking he had time to cross the intersection ahead of Pelous he proceeded across and the front of his station wagon had already cleared the river curb when he was hit on the right side near the rear. The district judge did not believe Stepter’s testimony in toto but found him guilty of negligence even under his own version of the facts.
Sidney Pelous testified that he first saw the station wagon when it was crossing the opposite side of the highway. Fie stated “I would say I saw it over on the opposite side of the highway. It was shooting across and I couldn’t imagine what the guy was doing coming through all that traffic”. It is clear that Stepter did not stop in the neutral ground, and it is equally clear that Pelous did not expect him to stop. Pelous *251 testified that when he first saw him he immediately applied his brakes but could not avoid the accident.
Mrs. Pelous testified that she did not see the station wagon before the impact, although she felt her husband apply his brakes.
The question presented is whether Pelous could have avoided the accident. His testimony places the station wagon in the middle lane of the opposite highway when he first saw it. At that time he said his car was about even with a certain street sign, and judged this distance to be 40 to 50 feet f.rom the intersection. He later marked both places on the photograph “P-1”, placing his position near the street sign.
The district judge found as a fact that Pelous was more than 75 feet from the intersection when he first saw the station wagon. It is obvious by comparing objects in the photograph such as the parked cars and the width of the three lane Causeway Boulevard .roadway with the distance between the intersection and spot where Pelous marked his position that Pelous was mistaken in estimating his distance from the intersection at only 40 or 50 feet, and that the district judge was correct.
Under the circumstances Pelous could and would have avoided the accident had he applied his brakes as he said he did when he first saw the station wagon. We must conclude that he did not apply his brakes at that time but waited until it was too late to avoid a collision. Under the circumstances he was guilty of negligence which was one of the proximate causes of the accident.
“When the motorist having the right of way should reasonably realize in time that the inferior traffic will continue its approach and will obstruct the superior motorist’s passage across the intersection, he is derelict in his duty, and thus guilty of negligence, should he fail to take every precaution possible to avoid a collision.” Randall v. Baton Rouge Bus Company, Inc., 240 La. 527, 124 So.2d 535. See also Stewart v. Lowe, La.App., 140 So.2d 231; Starnes v. Mury, La.App., 90 So.2d 901.
Having found that the insured of the Audubon Insurance Company was negligent, the next question- is whether the award of $3,900.00 was reasonable under the circumstances. The plaintiff is a 51 year old housewife. As a result of the collision, she was thrown against the dashboard and struck her head and left breast. She had x-rays taken immediately, but no broken bones were evident. The only objective sign of injury was a bruised area on her left breast, which cleared in approximately two months. The pain however, did not subside,- and plaintiff was forced to receive injections over a course of nineteen months, each injection giving complete ¡relief for a period of four to five weeks.
' Plaintiff’s injuries confined her to bed for a period of three weeks, after which she still had great difficulty with her household chores. Dr. Philibert who treated the plaintiff testified that in spite of the negative findings of the x-rays, he diagnosed her injury as a fracture of the costi-chondral junction, an area of soft- bone which connects the sternum with the second and third ribs. This area doesn’t show on x-ray photographs because of its softness, and a fracture can only be diagnosed by the characteristic symptoms of bruises, pain and a crunching noise which is heard upon the application of pressure to the area. Although the plaintiff had an osteo arthritic condition of the spine, the doctor testified that her pain was confined to an area in the front of her chest, and was not connected with the arthritic condition.
After having received the pain relieving injections over a period of nineteen months from D.r. Philibert, her family physician, plaintiff on June 19, 1960 in the absence of Dr. Philibert ■ from the city, consulted Dr. R. Ribando who gave her an injection containing demerol and recommended that she *252 consult a neurological surgeon, which she did. The neurological surgeon examined her thoroughly but could find no physical, clinical, pathelogical or organic cause for her complaints. After consultation with Dr. Ribando and with the approval and consent of the plaintiff herself it was agreed that the surgeon would perform an exploratory operation to see if he could find a cause for the pain, and if none could be found, he would sever' certain nerves in the spine. The operation insofar as determining the cause of the plaintiff’s pain was negative, and the surgeon as agreed severed the fourth, fifth and sixth thoracic nerves. This nerve severance eliminated all the pain from which plaintiff was suffering but left her with a numb area 5 or 6 inches in width extending from the left breast to her back. This numbness was an expected residual of the nerve severance and plaintiff was made aware of this fact before she consented to the operation. The numbness is aggravating and annoying and there is no known method to relieve it. The surgeon testified however that plaintiff will get accustomed to it in time.
The surgeon thought her injury was a “disorder between the fifth and sixth thoracic vertebrae, the exact nature of which is unknown, but I believe it to be a fracture or spur which was most probably caused by the injury which she sustained”. The district judge, in our opinion correctly, rejected this speculative opinion in favor of the diagnosis of Dr. Philibert, her treating physician, who testified that the pain was confined solely to her breast plate and her front ribs and was due to a costi-chon-dral fracture.
As pointed out by the district judge no evidence was introduced to show that the severing of the spinal nerves is an accepted prescribed procedure or method of treatment for injuries of this type or that it was necessary. What plaintiff accomplished by undergoing the operation was a calculated voluntary exchange of the pain which could be relieved far a numbness which cannot.
Although the district judge denied any damages for the annoyance and aggravation caused by the numbness, we are of the opinion that his award of $3,900.00 is neither inadequate nor excessive for the pain and suffering which plaintiff has already undergone and for the pain which she probably would have suffered periodically for some future time had she not had the nerves severed.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.